# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EDDIE WAYNE ADAMS,** | ) |
| Petitioner/Defendant, | ) |
| vs. | ) CIVIL NO. 06-cv-833-JPG |
| | ) CRIMINAL NO. 05-cr-40060 |
| **UNITED STATES of AMERICA,** | ) |
| Respondent/Plaintiff. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Petitioner Eddie Wayne Adams entered an open plea of guilty to one count of attempting to coerce a minor into sexual activity, in violation of 18 U.S.C. § 2422(b). He was sentenced to 84 months imprisonment, three years supervised release, a $5000 fine, and a special assessment of $100. No appeal was filed, and nine months later he filed this action pursuant to 28 U.S.C. § 2255.

Now before the Court is Adams's motion to amend his § 2255 motion (Doc. 12); his amended § 2255 is contained within the text of the instant motion, and it incorporates by reference all claims included in his prior pleadings. The original § 2255 motion (Doc. 1) is just four pages long and, as grounds for relief, Adams simply states "ineffective assistance of counsel" and then refers to his supporting memorandum (Docs. 3, 6, 7). This motion is **GRANTED**, as is his motion to expand the record (Doc. 11).

For clarity, virtually all of Adams's assorted grounds for relief are mentioned in his amendment (Doc. 12), with further briefing contained in his addendum (Doc. 3), his memorandum in support (Doc. 6), his supplemental brief (Doc. 7), and his supplement (Doc. 13).

## GENERAL PRINCIPLES

Relief under Section 2255 is "reserved for extraordinary situations." *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). A criminal defendant may attack the validity of his sentence under Section 2255 only if

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. However, a Section 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore,

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt*, 83 F.3d at 816. The Seventh Circuit has made it very clear that there are three types of issues that cannot be raised in a Section 2255 motion:

> (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*United States v. Belford*, 975 F.2d 310, 313 (7th Cir. 1992) (footnote omitted).

One of the most common methods of raising issues that might otherwise be barred in a Section 2255 motion is for a petitioner to claim that counsel was ineffective at trial, at sentencing, or on direct appeal. To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) deficient performance by counsel and (2) resulting prejudice from that deficient

performance. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994). To show this deficient performance by counsel, a petitioner bears the "heavy burden" of showing that counsel's performance fell well outside the range of professionally competent representation. *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988), *cert. denied*, 492 U.S. 908 (1989). In making this assessment, a court must employ a "highly deferential lens, indulging a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir. 1991), *cert. denied*, 502 U.S. 1116 (1992).

To satisfy the "prejudice" component, a petitioner must show that the errors committed by counsel rendered his trial and sentencing fundamentally unfair or the result unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364 (1993); *Nichols v. United States*, 75 F.3d 1137, 1141 (7th Cir. 1996). Further, "[a] court does not have to analyze both prongs of the *Strickland* test. A [petitioner's] failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (citations omitted).

In his motion and supporting memorandums, Adams raises the following substantive challenges to his conviction and sentence:

- unconstitutionality of the PROTECT Act and its Feeney Amendment
- unconstitutionality of 18 U.S.C. § 2422(b)
- defective indictment
- no showing of interstate commerce nexus
- unconstitutionality of mandatory minimum sentences
- insufficient evidence
- misapplication of sentencing factors

Each of these arguments could and should have been raised on direct appeal, but Adams did not file a direct appeal. Instead, he wraps each of his arguments in the shroud of one of two

variations of ineffective assistance of counsel. For some issues, Adams asserts that Counsel failed to raise these issues with this Court or on direct appeal. For other, he claims that Counsel failed to advise him of these issues, thus implicating the voluntariness of his guilty plea. The Court will address each of the underlying claims to determine what, if any, prejudice Adams suffered. If the Court finds that he may have been prejudiced, the Court will then determine whether Counsel's performance was deficient.

## CONSTITUTIONALITY OF THE PROTECT ACT AND FEENEY AMENDMENT

Adams's addendum (Doc. 3) is dedicated to an attack on the PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003) and the related Feeney Amendment, Pub. L. No. 108-21. § 401 (2003). He expounds eloquently on the doctrine of separation of powers and the history of the Feeney Amendment before finally getting to the point: the Feeney Amendment changed the manner of selecting individuals to serve on the Sentencing Commission, the group charged with formulating the United States Sentencing Guidelines. Adams believes that the Commission is now heavily weighted with representatives of the Executive Branch of the federal government (*i.e.,* prosecutors), rather than by members of the Judiciary. He also states that the Feeney Amendment removed judicial discretion to award a third point for "acceptance of responsibility" unless such a request was initiated by the Prosecutor. Finally, he points out that any downward departure not initiated by the prosecution must be reported to the Attorney General, as well as both Judiciary Committees.

His argument proceeds: because the Feeney Amendment violates the separation of powers, it must be struck down as unconstitutional. Thus, the Sentencing Guidelines promulgated by the Commission must also be declared unconstitutional. Finally, despite the severability clause contained in the PROTECT Act (at 651), Adams argues that the entire PROTECT Act must be struck

down (including the statute under which he was convicted).

This entire argument is essentially negated by *United States v. Booker*, 543 U.S. 220 (2005), which was decided a year before Adams was sentenced, and almost two years before he filed this action. In *Booker*, the Supreme Court reaffirmed its position in *Mistretta v. United States*, 488 U.S. 361 (1989), that the Sentencing Commission's role in formulating the Guidelines does not violate the separation of powers doctrine. *Booker*, 543 U.S. at 241-43. More importantly, *Booker* made it clear that the Sentencing Guidelines are *advisory*, rather than mandatory. *Id.* at 245. Because this rule was announced more than a year before Adams was sentenced, he cannot now argue that the Sentencing Guidelines as a whole must be struck down. His challenge to the Feeney Amendment is denied. Likewise, so is his challenge to the PROTECT Act as a whole.

## CONSTITUTIONALITY OF 18 U.S.C. § 2422

Adams next challenges the constitutionality of the statute under which he was convicted. At the time he was indicted and convicted, the statute read:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 5 years and not more than 30 years.

18 U.S.C. § 2422(b) (effective April 30, 2003 to July 26, 2006).

### *Lack of Affirmative Defense*

In his addendum (Doc. 3), Adams points out that this statute contains no affirmative defense. In contrast, he notes that at least two other federal statutes dealing with sex offenses do provide for an affirmative defense. *See* 18 U.S.C. § 1466A; 18 U.S.C. § 2252A. Further, the statute for

mandatory life imprisonment for repeated sex offenses against children provides that a prior conviction under § 2422 will not qualify as a prior offense if the defendant establishes that "no sexual act or activity" actually occurred during the commission of the prior offense. 18 U.S.C. § 3559(e)(3)(C). Adams argues that it is "fundamentally unfair" to have no affirmative defense set out in his statute of conviction, and certainly "Congress could not have intended such unfairness to reign supreme." Thus, he argues that § 2422 must be found unconstitutional. The Court disagrees.

First, § 1466A and § 2252A deal with child pornography, a crime distinctly different than the crime for which Adams was convicted: attempting to engage in sexual activity with a minor. As for the repeat-offender provisions in § 3559, Adams misses the point: the charging instrument and indictment make it clear that Adams believed he was communicating with a 13-year-old girl, with whom he was arranging to have sexual relations. The fact that his intended victim was not actually a minor is irrelevant to the question of his *intent* to commit his crime of conviction. *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007). Thus, the fact that § 2422 does not contain an affirmative defense for non-consummation of the intended act does not invalidate the statute.

### *Ambiguity/Vagueness*

Adams next argues that § 2422 is unconstitutionally ambiguous and vague (Doc. 6). He first refers back to the PROTECT Act and its many references to "visual depictions." To support this argument, Adams relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), wherein the Supreme Court differentiated between child pornography and "virtual" child pornography. The basis for that differentiation was clear:

> In contrast to the speech in *Ferber*, speech that itself is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not "intrinsically related" to the sexual abuse of children, as were the

> materials in *Ferber*.

*Id.* at 250 (internal citations omitted).

Adams does not explain how this ruling supports his argument. More importantly, Adams was not convicted for possessing visual depictions of children engaged in sexual activity and, as quoted above, § 2422 does not include that phrase. Thus, even if the phrase "visual depiction" could be found to be ambiguous or vague, such a finding would have no bearing on Adams's conviction. This argument, therefore, is baseless.

**DEFECTIVE INDICTMENT**

In his supplemental brief (Doc. 7), and again in his supplement (Doc. 12, pp. 12-14), Adams argues that the indictment was defective because two or more distinct offenses were contained in a single count. The indictment charges that Adams, using the Internet,

> did knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, to engage in sexual activity for which a person can be charged with a criminal offense under the laws of the State of Illinois, to-wit: Aggravated Criminal Sexual Abuse under IL ST CH 720 §5/12-16; all in violation of Title 18, United States Code, Section 2422(b).

Doc. 12, criminal case.

His basis for this claim is in the language of § 2422, which states defines the federal crime as soliciting a minor "to engage in prostitution *or any sexual activity for which any person can be charged with a criminal offense....*" 18 U.S.C. § 2422(b) (emphasis added). Because the indictment then references an underlying state statute, 720 ILCS § 5/12-16, Adams argues that he was charged with both offenses in the same count. He is mistaken. The record clearly shows that he was indicted and convicted in federal court only of violating the federal statute, 18 U.S.C. § 2422(b); the federal indictment did not charge him with a violation of state law.

- 7 -

Adams then shifts gears to argue that the referenced Illinois statute is ambiguous, and he points specifically to subsection (c)(1)(i), which states: "The accused commits aggravated criminal sexual abuse if: (1) the accused was 17 years of age or over and (i) commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed..." 720 ILCS § 5/12-16(c)(1)(i) (effective since Jan. 1, 2002). Adams then refers to "sexual conduct," which is defined by statute as

> any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused.

720 ILCS § 5/12-12(e).

Adams presents two possible interpretations of this definition:

> The first takes each phrase, separated by commas, as separate individual violations. In other words, if a person touches sex organs, or if a person touches a breast, or if a person transfers semen, they have committed sexual conduct.

> The second construction of this statute takes the phrases as a whole and applies them to the phrase "of a child under 13 years of age." In other words, . . . , [i]f a person does any of these things to a person *over* 13 years of age, they have *not* committed sexual conduct.

Doc. 7, p.10.

He reiterates his claim that both interpretations are possible, and that the ambiguity must be resolved in his favor. Adams then states that he had no sexual conduct with anyone under the age of 18, nor did he intend to commit any sexual act with a person under age 13. Thus, he could not have been charged in Illinois with a violation of § 5/12-16(c)(1)(i).

Once again, Adams misses the point. First, his proposed second interpretation of "sexual conduct" is baseless; the statute is **not** ambiguous. Second, the fact that he was thwarted in his attempt to engage in sexual conduct with a minor is irrelevant: his federal conviction was for *attempting* to *solicit* a minor to engage in sexual conduct, not for actual completion of the act.

The Court agrees with Adams on one point: his intended victim was not under the age of 13. Rather, as is clear in the criminal complaint, the confidential witness held herself out to be "13 almost 14." (Doc. 1, p. 2, ¶ 4.a., criminal case). Thus, he is correct in stating that he could not have been charged in Illinois with a violation of § 5/12-16(c)(1)(i). However, his federal indictment did not specify a subsection of § 5/12-16, and Adams completely overlooks the next subsection, which states:

> The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct *with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim.*

720 ILCS § 5/12-16(d) (emphasis added).

Adams does not dispute that he was attempting to engage in sexual conduct with a 13-year-old girl, nor does he suggest that he was 18 years old at the time he made such an attempt.[1] It follows that clearly he could have been charged in Illinois with a violation of § 5/12-16(d).

Finally, in his supplemental brief (Doc. 7), Adams suggests that "[s]ince §2422 has a requirement that the activity it prohibits be violative of another statute 'for which any person can be

---

[1] During his communications with the confidential witness, Adams held himself out to be 44 years old (Doc. 1, p. 2 at ¶ 4.b., criminal case). The Bureau of Prisons website indicates that now, almost 4 years after his arrest, Adams is 58 years old. *See* http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false &IDType=IRN&IDNumber=06738-025&x=63&y=14 (accessed June 29, 2009).

charged with a criminal offense,' that reference must logically be to a Federal statute." Adams is wrong. The statute does not make such a distinction, and neither will this Court. This claim is without merit.

**INTERSTATE COMMERCE**

Adams argues that his "use of the Internet, standing alone does not satisfy the interstate commerce nexus necessary to support a conviction under § 2422." Doc. 12, p. 8. He is incorrect. As detailed in the criminal complaint, even though he and his intended victim were located within the state of Illinois, the Internet servers and services he used were routed through states other than Illinois (Doc. 1, criminal case, pp. 9-11, ¶¶ 9-14). Furthermore, courts have consistently found that use of the Internet "necessarily involves interstate communications and therefore constitutes the 'use of a facility of interstate commerce.'" *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004). *See also United States v. Pisman*, 443 F.3d 912, 913 (7th Cir. 2006); *United States v. Hicks*, 457 F.3d 838, 840 (8th Cir. 2006); *United States v. Brand*, 467 F.3d 179, 202-03 (2d Cir. 2006), *cert. denied*, 550 U.S. 926 (2007); *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005). This claim is without merit.

**MANDATORY MINIMUMS**

Adams next argues that mandatory minimum sentences "are a concept whose time, like that of the dinosaurs, has passed." Doc. 6, p. 39. He presents no case authority to support this contention. Rather, he refers only to commentary by judges, legislators, and attorneys who have expressed dissatisfaction with the imposition of mandatory minimum sentences. With regard to the five-year mandatory minimum sentence in effect at the time of Adams's conviction, the Tenth Circuit specifically found that "the mandatory minimum five-year sentence imposed by the

PROTECT Act is constitutional." *United States v. Munro*, 394 F.3d 865, 873 (10th Cir.), *cert. denied*, 544 U.S. 1009 (2005). More recently, the Seventh Circuit stated that "the ten-year mandatory minimum sentence provision in § 2422(b) is not grossly disproportionate to the crime of attempting to entice a minor to engage in a criminal sexual act and therefore does not violate the Eighth Amendment's prohibition of cruel and unusual punishment." *United States v. Nagel*, 559 F.3d 756, 762 (7th Cir. 2009), *citing United States v. Butters*, 267 Fed.Appx. 773, 778 (10th Cir. 2008).[2] This argument is without merit.

**HARMLESS BANTER**

In his most recent supplement (Doc. 13), Adams suggests that his conviction cannot be sustained in light of *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008). In *Gladish*, the defendant engaged in an Internet chat room discussion twice with a purported 14-year-old girl, during which they discussed the possibility of meeting to have sex. She agreed, "but no arrangements were made." *Id.* at 648. Gladish was arrested and convicted for a violation of § 2422(b) solely on the content of the chat room dialog, and the Seventh Circuit reversed that conviction.

> We are surprised that the government prosecuted him under section 2422(b). Treating speech (even obscene speech) as the "substantial step" would abolish any requirement of a substantial step. It would imply that if X says to Y, "I'm planning to rob a bank," X has committed the crime of attempted bank robbery, even though X says such things often and never acts. The requirement of proving a substantial step serves to distinguish people who pose real threats from those who are all hot air; in the case of Gladish, hot air is all the record shows. So he is entitled to an acquittal on the section 2422(b) count. . . .

*Id.* at 650.

---

[2] The current version of the statute now provides for a 10-year mandatory minimum. 28 U.S.C. § 2422(b) (effective July 27, 2006).

Unlike Gladish, Adams did take the "additional step" toward completion of the crime: he traveled from Mt. Vernon, Illinois, to his intended victim's purported address in Carbondale, Illinois. Thus, the six weeks of emails, phone conversations, and web cam masturbation between Adams and the confidential witness, cannot now be recharacterized as hot air or harmless banter. This argument is baseless.

**MISAPPLICATION OF SENTENCING FACTORS**

There remains just one substantive argument to address. Adams first raised this argument in his memorandum (Doc. 6, pp. 19-23), then added further elaboration in his amendment (Doc. 12, pp. 3-6). As discussed above, the mandatory minimum sentence was five years, but Adams was sentenced to 84 months, two years longer than the minimum. He argues that this sentence was unreasonable, when measured against the factors set forth in 18 U.S.C. § 3553(a). He also states that he was not given prior notice of the Court's intention to impose an upward departure. In connection with this claim, he argues that Counsel was ineffective in failing to challenge this upward departure, and that Counsel was ineffective in failing to file a direct appeal to challenge his enhanced sentence. He believes that had Counsel challenged the sentence during sentencing, or on direct appeal, his sentence would have been just five years, rather than seven years.[3]

This argument is the only one that has any potential merit, and this is the only claim that the Government need address in its response.

/////

/////

---

[3] Unlike some of his other arguments, Adams does not suggest that his decision to plead guilty would have been affected by the knowledge that he might be subjected to an enhanced sentence.

**DISPOSITION**

The Court **ORDERS** the Government to file a response to Adams's motion within **THIRTY (30) DAYS** of the date of this Order.

As discussed above, the Government need only respond to Adams's claim regarding his enhanced sentence, to-wit:

1. Was the 84-month sentence unreasonable?

2. Was Adams entitled to prior notice of a possible enhanced sentence?

3. Was Counsel ineffective in failing to challenge the sentence at sentencing?

4. Was Counsel ineffective in failing to challenge the sentence on direct appeal?

The Government shall, as part of its response, attach all relevant portions of the record.

**IT IS SO ORDERED.**

**Dated: July 14, 2009.**

                                        **s/ J. Phil Gilbert**
                                        **U. S. District Judge**